IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sheila Lapotsky White,                        :
                          Petitioner          :
                                              :
          v.                                  :      No. 672 C.D. 2021
                                              :      Submitted: February 11, 2022
Johnson Matthey Holdings, Inc.                :
(Workers' Compensation Appeal                 :
Board),                                       :
                          Respondent          :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                              FILED: July 5, 2022

          Sheila Lapotsky White (Claimant) has petitioned this Court to review
an adjudication of the Workers' Compensation Appeal Board (Board), affirming as
amended the decision of the Workers' Compensation Judge (WCJ). The WCJ
granted in part Claimant's Claim Petition for Workers' Compensation Benefits
(Claim Petition) and Petition for Review of Workers' Compensation Benefits
(Review Petition).[1] Upon review, we affirm.

                              **BACKGROUND**

          Claimant was employed as a sales coordinator by Johnson Matthey
Holdings, Inc. (Employer).[2] Concurrently, Claimant maintained secondary

_____

[1] The WCJ also denied and dismissed a Penalty Petition filed by Claimant. Claimant does
not appeal that decision.
[2] Unless stated otherwise, we adopt the factual background for this case from the Decision
of the WCJ, entered June 8, 2020, which is supported by substantial evidence of record. *See* WCJ
Decision, 6/8/20, at 3-16.

employment as a waitress. On October 9, 2018, Claimant was injured when she slipped and fell in Employer's breakroom. Claimant ceased working as a waitress immediately but continued to work for Employer for several months.[3]

Following the incident, Employer acknowledged that Claimant suffered "multiple injuries including both physical and psychological." Notice of Comp. Payable (NCP), 1/12/19. Shortly thereafter, Employer amended the NCP, accepting a right knee contusion, a right ankle sprain, and unspecified injuries to the neck, lumbar, and left knee. Amended NCP, 1/18/19.[4] Employer also issued a Notice of Temp. Comp. Payable (NTCP), authorizing weekly payments of $759.71 commencing January 15, 2019. NTCP, 1/19/19.[5]

On March 27, 2019, Dr. Robert Mauthe conducted an independent medical examination (IME) of Claimant. Dr. Mauthe concluded that Claimant had recovered from her work injuries, except the injury to her right knee, and that Claimant could return to sedentary work with restrictions. *See* Dep. of Dr. Mauthe, 11/5/19, Ex. 2 (including Employer's Letter Offer, 4/12/19; Notice of Ability to Return to Work, 4/10/19; IME, 4/10/19).

On April 12, 2019, Employer officially notified Claimant of its determination that she was able to return to work and offered Claimant a modified position at the same hourly rate, including an opportunity to work from home. *See id.*; *see also* Dep. of Joseph Torre, 12/19/19, at 15. Claimant did not respond to this

---

[3] Claimant last worked for Employer on or about January 15, 2019. However, as of December 19, 2019, Claimant remained an employee entitled to benefits. *See* Dep. of Joseph Torre, 12/19/19, at 15.

[4] Both the NCP and Amended NCP authorized compensation only for medical treatment.

[5] Claimant had arthroscopic surgery performed on her right knee on January 15, 2019. *See* Dep. of Claimant, 6/8/19, at 29-31; Dep. of Dr. Murphy, 9/27/19, at 11; Dep. of Dr. Schwartz, 9/27/19, at 8, 15; Dep. of Dr. Mauthe, 11/5/19, at 18.

2

offer. Subsequently, Employer notified Claimant that temporary compensation would cease as of April 12, 2019. Notice Stopping Temp. Comp. (NSTC), 4/19/19. Employer also notified Claimant that it had denied "[i]ndemnity in whole, but not [m]edical." Notice of Workers' Comp. Denial (NWCD), 4/19/19.

Claimant filed a Claim Petition, alleging that she had sustained injuries to her cervical, lumbar and thoracic spine, left hip, right ankle, right and left knees, and that she suffered chronic pain as a result of her work injury. Claim Pet., 5/2/19. She sought partial disability benefits as of October 9, 2018, and full disability benefits as of January 12, 2019. *Id.*[6] Claimant also filed a Review Petition, alleging an incorrect description of her work injuries, an incorrect average weekly wage (AWW), and that her injuries had caused decreased earning power. Rev. Pet., 5/2/19. Employer responded to these petitions, specifically denying any expanded or additional injuries as alleged by Claimant, asserting that it had offered Claimant alternative employment but that she had not returned to work, and further asserting that it had paid Claimant's medical bills and indemnity while Claimant was unable to work due to her knee surgery. *See* Answer to Rev. Pet., 5/2/19.

The WCJ held hearings at which both parties presented evidence. For her part, Claimant testified live and via trial deposition to the circumstances of her injury, to her various treatments and therapies, and that she continues to experience back pain throughout her spine, as well as right knee and right ankle pain. Claimant asserted that she was unable to return to her position with Employer because she is no longer capable of sedentary work. Further, according to Claimant, she takes

---

[6] Claimant sought partial disability because she was unable to maintain her secondary employment as a waitress and full disability following her knee surgery.

3

prescribed pain medications, including Flexeril, which makes her "loopy." Dep. of Claimant, 6/8/19, at 39.[7]

Claimant introduced deposition testimony from Dr. Todd Schwartz, D.O., a board-certified orthopedic surgeon, who examined Claimant on September 19, 2019, nearly a year after her injuries. Dr. Schwartz opined that Claimant had suffered work-related injuries to the cervical and lumbar areas of her spine, a meniscal tear of her right knee, aggravated arthritis of her left knee, and a sprain of her right ankle with a tear of the peroneus brevis tendon. According to Dr. Schwartz, Claimant could not resume her position as a waitress and would have difficulty returning to Employer due to her pain and medications.[8]

Claimant also introduced deposition testimony from Dr. William Murphy, D.O., a board-certified specialist in physical medicine and rehabilitation. Dr. Murphy agreed with the diagnoses of Dr. Schwartz. Regarding Claimant's medications, Dr. Murphy acknowledged that he had re-filled a prescription for Flexeril on one occasion, February 14, 2019, which would have provided Claimant with 60 pills, enough for no more than one month.

In response, Employer introduced deposition testimony from Dr. Mauthe, a physician board-certified in physical medicine and rehabilitation. Following his examination of Claimant on March 27, 2019, as well as a review of Claimant's medical history and diagnostic testing, Dr. Mauthe concluded that

---

[7] Claimant testified that she takes Flexeril, a muscle relaxer, primarily in the evening but sometimes during the day if she is "swollen or in extreme pain." Dep. of Claimant, 6/18/19, at 46.

[8] On cross-examination, Dr. Schwartz conceded that he did not prescribe Flexeril for Claimant; that a patient should use Flexeril for three to six months; and that there are alternate medications that do not cause the same side effects. *See* Dep. of Dr. Schwartz at 45-46.

Claimant had not recovered from her right knee injury.[9] However, Dr. Mauthe opined that Claimant had fully recovered from the soft-tissue injuries to her spine, right wrist, and right ankle. According to Dr. Mauthe, Claimant could return to sedentary work.

Dr. Mauthe specifically refuted the testimony of Dr. Schwartz and Dr. Murphy, characterizing it as "medically absurd and non-physiologic." Dep. of Dr. Mauthe at 31.[10] Dr. Mauthe also rejected Claimant's use of Flexeril to remedy knee swelling or pain, testifying that it is "a medication to relax muscles . . . and should only be used at night to help assist with sleep, but it's not indicated for her right knee meniscal tear." *Id.* at 33.

Employer also introduced deposition testimony from Joseph Torre, who works for Employer's human resources department. Mr. Torre described the accommodations Employer was willing to make to ensure that Claimant could return to her pre-injury position. For example, Employer offered Claimant a flexible, work-from-home schedule. If Claimant chose to return to the office, Mr. Torre suggested that Claimant could consult with an on-site, occupational health nurse and

---

[9] Claimant's medical history is extensive. Notes transcribed by her primary care doctor in 2017 listed right knee degenerative joint disease, morbid obesity, pain in the right foot, chronic meniscus tear, sciatica, swelling, seasonable allergies, history of alcoholism, and obstructive sleep apnea. *See* Dep. Dr. Schwartz at 34-35; *see also* Dep. of Dr. Mauthe at 35-36. In April and November of 2015, Claimant had surgical procedures to repair damage to her right knee. *See* Dep. Dr. Schwartz at 40-42. In addition, although Claimant had denied any ankle problems prior to her work injury, she had complained of swelling and pain in her right foot dating back to August 2015, and a surgical repair of her right ankle occurred in 2017. *See* Dep. of Dr. Murphy at 50-52.

[10] Upon considering the multiple diagnoses of Dr. Murphy, Dr. Mauthe testified, "Frankly, I find it medically absurd and non-physiologic to describe 11 injuries as a result of a simple slip and fall with a clear longstanding history of knee arthritis, cervical and lumbar arthritis, history of obesity, to describe 11 separate injuries as a result of a simple slip and fall to me is just -- it's not physiologically possible. I mean, this is not a high velocity motor vehicle accident. This is a slip and fall." Dep. of Dr. Mauthe at 31.

5

safety coordinator and that transportation arrangements could be made if Claimant was unable to drive. According to Mr. Torre, the job offer remains open to Claimant.

After considering the evidence, the WCJ determined that Claimant had sustained work-related injuries to her right knee, the cervical and lumbar areas of her spine, right wrist and right ankle. However, the WCJ further determined that Claimant had recovered from all injuries except the injury to her right knee. The WCJ specifically found the testimony of Claimant to be neither credible nor persuasive regarding her ability to return to work and her ongoing physical complaints. In particular, the WCJ found it significant that Employer had offered her flexible accommodations, "[y]et Claimant did not attempt the job." WCJ Decision, 6/8/20, at 14 (basing her credibility determination on "Claimant's affect and demeanor"). The WCJ also credited the testimony of Dr. Mauthe over that of Dr. Schwartz and Dr. Murphy. According to the WCJ, the testimony of Claimant's doctors lacked credibility because they had both alleged that Claimant could not perform her pre-injury work duties because of her medications, "yet both admitted that . . . they had no idea exactly how often Claimant was taking the medications." *Id.* Furthermore, the WCJ rejected their opinions because they were "based, in part, on Claimant's complaints[,] and this [WCJ] has not found Claimant to be credible." *Id.*

For these reasons, the WCJ granted Claimant's Claim Petition and Review Petition in part. The WCJ concluded that Claimant was able to return to her position with Employer, considering the accommodations offered, but remained entitled to partial disability benefits because she could not return to her secondary employment as a waitress. *See id.* at 14-17.[11]

---

[11] Employer also remains liable for the medical treatment of Claimant's right knee.

6

Claimant appealed to the Board, asserting that (1) substantial, competent evidence did not support the WCJ's finding that Claimant had fully recovered from her right ankle injury and (2) the WCJ miscalculated Claimant's secondary income. Appeal Filed by Claimant, 6/24/20. Upon review, the Board affirmed but corrected a mathematical error made by the WCJ in calculating the average weekly wage. Bd.'s Op. & Order, 5/18/21. Claimant then sought further review in this Court.

## ISSUES[12]

In her first issue, Claimant asserts that there is not substantial, competent evidence that she has fully recovered from her right ankle injury. Claimant's Br. at 20. In support of this assertion, Claimant points to the expert testimony of Dr. Mauthe. *See id.* at 21-26. According to Claimant, Dr. Mauthe's opinion regarding Claimant's recovery was based upon false and/or inaccurate information and, therefore, could not support the partial termination of her benefits. *Id.* at 26.

Second, Claimant asserts that the WCJ erred when it partially terminated her indemnity benefits. *Id.* at 13. Third, Claimant asserts that the WCJ erred in *sua sponte* modifying her total disability benefits. *Id.* at 26. Finally, in her fourth issue, Claimant asserts that the WCJ failed to issue a reasoned decision. *Id.* at 28.

## DISCUSSION

In a workers' compensation appeal, our review is limited to determining whether an error of law was committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Bryn*

---

[12] We have reordered Claimant's issues.

*Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019). Substantial evidence is relevant evidence that a reasonable person may accept as adequate to support a finding. *City of Philadelphia v. Workers' Comp Appeal Bd. (Kriebel)*, 29 A.3d 762 (Pa. 2011). Further, on appeal, the party prevailing before the WCJ is entitled to the benefit of all favorable inferences drawn from the evidence. *Valenta v. Workers' Comp. Appeal Bd. (Abington Manor Nursing Home & Rehab & Liberty Ins. Co.)*, 176 A.3d 374, 382 (Pa. Cmwlth. 2017).

### 1. Substantial Evidence of Recovery

Claimant asserts that Dr. Mauthe's testimony concerning Claimant's recovery from an injury to her right ankle was "equivocal, incompetent, and not based upon substantial evidence of record." Claimant's Br. at 20. According to Claimant, Dr. Mauthe's failure to examine Claimant's ankle or review records related to her ankle suggest that he lacked a complete grasp of her injury, thus rendering incompetent his opinion of full recovery. *Id.* at 21. We disagree.

An employer must prove a recovery with "unequivocal, competent medical evidence." *Hall v. Workers' Comp. Appeal Bd. (Am. Serv. Grp.)*, 3 A.3d 734, 740 (Pa. Cmwlth. 2010). Medical evidence of recovery is competent where an expert, having reviewed the relevant records, having performed an examination, and having taken a history, opines within a reasonable degree of medical certainty that a claimant has fully recovered from an injury at the time of the expert's examination. *To v. Workers' Comp. Appeal Bd. (Insaco, Inc.)*, 819 A.2d 1222, 1225 (Pa. Cmwlth. 2003). Further, a medical expert's failure to examine a specific body part is not necessarily fatal, provided she assumes the presence of an injury and finds it to be resolved when she conducts the examination. *See Hall*, 3 A.3d at 740-43.

8

Here, Dr. Mauthe took a history and conducted a physical examination of Claimant on March 27, 2019. Dep. of Dr. Mauthe at 16. Claimant informed Dr. Mauthe that she had sustained injuries to her neck, back, and right knee. According to Dr. Mauthe, "[s]he did not express any complaint regarding her ankle." *Id.* Nevertheless, referring to an incident report from the day following Claimant's accident, Dr. Mauthe noted that Claimant had complained of injuries to "both knees, right ankle, right wrist, and low back." *Id.* at 18. In addition, Dr. Mauthe reviewed an x-ray report that revealed no fracture in Claimant's ankle. *Id.* Based upon his physical examination, the records available at the time, and Claimant's description of her current ailments, Dr. Mauthe concluded, within a reasonable degree of medical certainty, that she had sustained "a soft tissue injury or sprain/strain of her . . . right ankle, for which she went on to fully recover and had no objective evidence of impairment at the time of [his] evaluation." *Id.* at 23.

In our view, Dr. Mauthe's testimony was competent medical evidence that Claimant had recovered from an injury to her right ankle. *See To*, 819 A.2d at 1225. Further, because he was aware that Claimant had initially complained of a right ankle injury, because initial diagnostic testing revealed no fracture, and because Claimant did not indicate to Dr. Mauthe that she continued to experience right ankle pain, Dr. Mauthe's failure to examine her right ankle specifically does not render his opinion incompetent. *See Hall*, 3 A.3d at 740-43. Accordingly, Claimant's argument is without merit.[13]

---

[13] Dr. Mauthe also testified that, upon reviewing updated records from her other treating physicians, he was surprised to learn that Claimant had previously broken her right ankle, that she now complained of ongoing ankle pain, and that she attributed that current pain to her work injury. *See* Dep. of Dr. Mauthe at 35. Building upon this testimony, in addition to Dr. Mauthe's admission that he did not examine Claimant's right ankle specifically, Claimant further argues that magnetic resonance imaging performed on her right ankle *after* the IME, as well as the testimony from Dr.

## 2. Partial Termination of Indemnity Benefits

Claimant asserts that the WCJ partially terminated her indemnity benefits, "a remedy that is not recognized under Pennsylvania law." Claimant's Br. at 19. However, Claimant did not raise this specific issue in her appeal to the Board, nor do we view this issue as reasonably encompassed within the assertions of error set forth in Claimant's appeal to the Board. *See* Appeal Filed by Claimant (asserting: (1) a lack of substantial evidence that Claimant had recovered from her ankle injury and (2) an error in calculating her average weekly wage). Accordingly, we deem this issue waived. *See Starr Aviation v. Workers' Comp. Appeal Bd. (Colquitt)*, 155 A.3d 1156, 1162 (Pa. Cmwlth. 2017) (noting that a party must specifically identify the grounds being appealed to the Board) (citation omitted); Pa.R.A.P. 1551(a); 34 Pa. Code § 111.11(a)(2). [14]

---

Murphy and Dr. Schwartz, undermine the competency of Dr. Mauthe's opinion. *See* Claimant's Br. at 22-25. However, this argument goes to the appropriate weight and credibility of this evidence, not its competency. It is well settled that "the WCJ is the fact[-]finder, and 'it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence.'" *Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Emp. Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017) (quoting *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003)). Thus, Claimant's argument is misplaced.

[14] Absent waiver, we note that Claimant repeatedly mischaracterizes the WCJ decision to grant her Claim Petition and Review Petition in part as a "partial termination" of her benefits. *See, e.g.*, Claimant's Br. at 13, 20, 26. We agree that a WCJ may not grant a termination petition in part. *See Mitoulis v. Workers' Comp. Appeal Bd. (Sunrise Senior Living Mgmt., Inc.)* (Pa. Cmwlth., No. 991 C.D. 2018, filed Apr. 27, 2020) (unreported), 2020 WL 1983765, at *3 (observing that there is no basis for a partial termination of disability benefits); *see also* 210 Pa. Code § 69.414(a) (permitting our reliance on unreported cases for their persuasive value). However, that is not what occurred here. Notably, Employer did not file a termination petition. Furthermore, in response to Employer's NSTC, which informed Claimant that Employer would cease temporary disability payments following the IME and its determination that Claimant could return to work with restrictions, Claimant filed a Claim Petition and a Review Petition, which sought to expand the list of recognized work injuries, amend her average weekly wage to include her secondary employment, and award her partial disability benefits as of October 9, 2018, and full disability benefits as of January 12, 2019. Claimant bore the burden of proof. *See W. Penn Allegheny Health*

### 3. *Sua Sponte* Modification of Disability Benefits

Claimant asserts that the WCJ reversibly erred when she *sua sponte* reduced Claimant's disability benefits. Claimant's Br. at 26. In brief remarks, Claimant suggests that this error rests upon the WCJ's finding that Claimant had recovered from her right ankle injury. According to Claimant, "[i]t is thus abundantly clear that the modification of her judicially adjudicated total disability benefits was predicated entirely upon the full recovery from the right ankle injury." *Id.* at 27. Moreover, according to Claimant, "[t]he WCJ thus found [Claimant] to be both fully recovered and not fully recovered," and this "judicial contradiction itself warrants a [r]eversal." *Id.*

It is unclear what Claimant means when she references an adjudication of total disability. Certainly, the WCJ concluded that Claimant was entitled to *temporary* total disability while she recovered from her knee surgery. Further, Claimant does not develop, in any meaningful way, her assertion that the WCJ acted *sua sponte*, nor does she support her arguments with citation to relevant authority. *See id.* at 26-27. Accordingly, this claim is waived. *See Am. Rock Mechs., Inc. v. Workers' Comp. Appeal Bd. (Bik & Lehigh Concrete Techs.)*, 881 A.2d 54, 56 (Pa.

---

*Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 478 (Pa. Cmwlth. 2021) noting that claimant bears burden to prove elements of claim petition); *Colagreco v. Workers' Comp. Appeal Bd. (Vanguard Grp., Inc.)*, 232 A.3d 971, 978-79 (Pa. Cmwlth. 2020) (stating that, in filing a review petition, the claimant had the burden to prove that the NCP-acknowledged injury, subacromial bursitis of the right arm, should be amended to include chronic regional pain syndrome of the right upper extremity). The WCJ granted Claimant's petitions in part, concluding that Claimant had established a partial disability from the date of her injury because she could not maintain secondary employment as a waitress and that Claimant was entitled to total temporary disability following her knee surgery, until such time as Employer offered her suitable employment. Contrary to Claimant's assertion, the WCJ did not partially terminate Claimant's disability benefits. Rather, the WCJ reduced Claimant's benefits based on the availability of a job within her restrictions. *See* WCJ Decision at 16-17. Thus, Claimant's assertion is without merit.

Cmwlth. 2005) (holding a substantial evidence claim waived where petitioner failed to provide analysis and relevant authority); Pa.R.A.P. 2119(a).[15]

## 4. The Reasoned Decision of the WCJ

Finally, Claimant asserts that the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834. *See* Claimant's Br. at 28. Claimant did not raise this specific issue in her appeal to the Board. Accordingly, it is waived. *See Starr Aviation*, 155 A.3d at 1162; Pa.R.A.P. 1551(a); 34 Pa. Code § 111.11(a)(2); *see also, e.g.*, *Jenkins v. Workers' Comp. Appeal Bd. (Youth Advoc. Program, Inc.)* (Pa. Cmwlth., No. 2189 C.D. 2008, filed June 4, 2009) (unreported), 2009 WL 9100373, at *2 (finding claim that WCJ had not rendered a reasoned decision was waived for failure to raise before the Board).[16, 17]

---

[15] Considering the various petitions before the WCJ and the several hearings held in this matter, Claimant's assertion that the WCJ acted *sua sponte* is devoid of merit, nor does it reflect the law accurately. *See* Section 413(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 771-772.

[16] We cite *Jenkins* for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[17] Claimant's assertion is also without merit. Section 422(a) of the Act provides that a reasoned decision is one "containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions." 77 P.S. § 834. An adjudication must provide for meaningful appellate review. *Id.* Where, as here, the WCJ must evaluate conflicting testimony from medical experts who testified only by deposition, a reasoned decision must provide "some articulation of the actual objective basis for the credibility determination." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1053 (Pa. 2003). In this case, the WCJ made detailed findings of fact and conclusions of law. *See* WCJ Decision at 3-16. Moreover, for example, the WCJ articulated her reasons for crediting the expert testimony of Dr. Mauthe over that of Dr. Schwartz and Dr. Murphy. *Compare id.* at 14 (crediting Dr. Mauthe's clear explanations, consideration of Claimant's prior medical conditions, her medications, and the mechanism of her injury), *with id.* (noting the inability of Dr. Schwartz and Dr. Murphy to testify as to Claimant's use of medications, their failure to restrict her driving despite acknowledging that medications made Claimant "loopy," and criticizing their reliance on Claimant's description of her ailments where WCJ observed her demeanor and found her to be not credible).

## CONCLUSION

We reject Claimant's assertion that the medical testimony from Dr. Mauthe was incompetent. Claimant's additional claims on appeal are waived and otherwise without merit. Therefore, we affirm the Board's order.

_____
LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sheila Lapotsky White,　　　　　　　:
　　　　　　　Petitioner　　　　:
　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　:　No. 672 C.D. 2021
　　　　　　　　　　　　　　　　:
Johnson Matthey Holdings, Inc.　　:
(Workers' Compensation Appeal　　:
Board),　　　　　　　　　　　:
　　　　　　　Respondent　　　:

# **O R D E R**

AND NOW, this 5th day of July, 2022, the order of the Workers' Compensation Appeal Board, entered May 18, 2021, is AFFIRMED.

_____
LORI A. DUMAS, Judge